FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 1 - 2011 ★

BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

GABRIELLE HAMMERSTEIN,

              Plaintiff,

-against-

THE FEDERAL REPUBLIC OF GERMANY,

              Defendant.

---------------------------------------------------------------X

09-CV-443 (ARR) (RLM)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff, Gabrielle Hammerstein, brings this action against defendant, the Federal Republic of Germany ("Germany"), alleging tortious conduct with respect to real property located in Schwerin, Germany. Plaintiff asserts nine causes of action: (i) breach of fiduciary duty, (ii) conversion, (iii) unjust enrichment, (iv) fraudulent misrepresentation, (v) interference with an agreement between the United States and Germany, (vi) interference with property, (vii) slander of title, (viii) tortious and/or negligent misrepresentations, and (ix) violations of civil and human rights. Now before the court is defendant's motion to dismiss all claims for lack of subject-matter jurisdiction under the Foreign Sovereign Immunity Act (the "FSIA"). Because the court finds that Germany is immune from suit under the FSIA, it grants defendant's motion to dismiss the complaint.

## BACKGROUND

Plaintiff alleges the following facts in her complaint. Plaintiff was born in Germany in the 1920's and is a current resident of Queens, New York. Compl. ¶¶ 1, 41. Her parents, prior to 1938, owned a Sanatorium for Neurology and Psychiatry on a piece of real property (the "Property") in Schwerin, Germany. Id. ¶¶ 5-6. The Property is a piece of land consisting of a

three-and-half story mansion and coach house amid a large park-like setting adjacent to the 1200-year-old "Fairytale Castle." Id. ¶ 7. In 1935 and 1936, plaintiff and her parents fled Germany, leaving the Property behind, and settled in the United States. Id. ¶ 8. The Nazi Gestapo subsequently acquired the Property through a forced sale in 1938 and used it as a headquarters and prison until the end of World War II, at which point Schwerin and the property became part of East Germany. Id. ¶¶ 9-10. From the end of World War II until August 1992, the Property was used as a children's hospital, with the exception of the attic, which was used to receive eavesdropped communications from Schwerin by East Germany's secret police. Id. ¶¶ 10, 28.

In 1992, following the reunification of Germany, plaintiff obtained German counsel and attempted to attain restitution of the Property. Id. ¶ 13. On August 25, 1992, plaintiff was notified by the Mayor's office in Schwerin that the Property had been returned. Id. ¶ 14. However, on February 18, 1993, Germany's Federal Asset Office objected to the return of the Property, depriving plaintiff of ownership, which reverted back to the Schwerin. Id. ¶¶ 17-18. In 1993, the Conference on Jewish Material Claims Against Germany, Inc. (the "JCC") applied for and was granted ownership of the Property and filed its own objection against plaintiff's ownership of the Property. Id. ¶¶ 21-22. In 1996 both Germany's Federal Asset Office and the JCC withdrew their objections, and plaintiff reacquired the Property. Id. ¶¶ 23-25.

In 1996, plaintiff visited the Property, which had been in good condition as of 1992, and found all the windows and doors open, the walls, ceilings and staircases in disrepair, and the exterior and interior of the building painted with "satanic designs, swastikas and lurid descriptions." Id. ¶ 26. The Property had been damaged by "vandals, vagrants, and homeless aliens fleeing large areas of Europe . . . in search of asylum," some of whom were placed on the

Property by Germany. Id. ¶ 27. Plaintiff was informed by the German government and city of Schwerin that she was responsible for repairs to the Property under Landmark Protection laws, at a cost of between four and five million Euros. Id. ¶ 32.

During the period in which the Property was owned by Schwerin and the JCC, plaintiff continued to pay property taxes, fire and liability insurance, street cleaning fees, and garbage removal fees from her home in Queens. Id. ¶ 19. Plaintiff also paid to have the fence of the Property repaired. Id. Eventually, at some point between 1992 and 1996, plaintiff's lawyer intervened and tax and fee payment ceased. Id. ¶ 20. Germany, however, refused to refund the previous payments. Id. ¶ 20. On June 5, 2000, plaintiff was notified by the German Federal Ministry of Finance that she had indeed not owned the Property during the period of objections and was not responsible for the taxes and fees. Id. ¶ 34. However, despite enlisting the assistance of a U.S. Department of State official, plaintiff was subsequently unable to recoup the payments from Germany. Id. ¶¶ 34-35, 37-38.

This action followed.

## DISCUSSION

Defendant moves to dismiss all of plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this court lacks subject-matter jurisdiction because Germany is immune from suit as a foreign sovereign under the FSIA, 28 U.S.C § 1602-1611.[1] In response, plaintiff asserts that this court has subject-matter jurisdiction under two statutory exceptions to foreign sovereign immunity: § 1605(a)(2) (the "commercial activities exception") and § 1605(a)(3) (the "takings exception").[2] Defendant submits that the commercial activities

---

[1] Defendant also moves to dismiss the claims based on the statute of limitations and forum non conveniens. Because the court finds the claims are barred by the FSIA, it does not reach these arguments for dismissal.

[2] Plaintiff also asserts jurisdiction under the Alien Tort Claims Act (the "ATCA") which provides that the "the

3

exception and takings exception do not apply here. For the reasons that follow, the court agrees.

I. Standard of Review

Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). As the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject-matter jurisdiction is proper based on facts existing at the time the complaint was filed. Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996). For the purposes of a Rule 12(b)(1) motion, the court may consider affidavits and other materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

II. Foreign Sovereign Immunities Act

"The FSIA 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country'." Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 74 (2d Cir. 2010) (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993)). Under the FSIA, foreign states are immune from the jurisdiction of U.S. federal and state courts unless the claim to be adjudicated falls under one of the FSIA's exceptions. See § 1604. The defendant bears the burden of showing that it is a foreign sovereign. Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, 615 F.3d 97, 105 (2d Cir. 2010). If the defendant meets this burden, the plaintiff must prove that her claim satisfies one of the FSIA's exceptions. Id. The seven statutory exceptions

---

district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. However, the FSIA is the "sole basis of jurisdiction over a foreign state," and the ATCA provides no exception. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434-35 (1989). The "Foreign Sovereign Immunities Act bars most suits against foreign sovereigns, including those brought under the ATCA." Flores v. S. Peru Copper Corp., 414 F.3d 233, 246 (2d Cir. 2003) (citations omitted). Because the FSIA bars the suit in this case, the court does not address the applicability of the ATCA.

4

under §1605(a) are:

> (1) where the foreign state waives immunity; (2) where the action is based on a commercial activity by the foreign state carried on in the United States or has a direct effect in the United States; (3) where the action relates to the expropriation of property located in the United States; (4) where the action relates to property in the United States acquired by succession or gift; (5) where the action relates to a tort committed in the United States; (6) where the action relates to the enforcement of an arbitration agreement; and (7) where the action relates to personal injury or death caused by acts of torture, extrajudicial killing, aircraft sabotage, or hostage taking.

Shakour v. Federal Republic of Germany, 199 F. Supp. 2d 8, 13 (E.D.N.Y 2002) (summarizing § 1605(a)). As plaintiff readily concedes, Germany is a foreign state. Compl. ¶ 2. Plaintiff asserts jurisdiction in the instant action under FSIA's commercial activities and takings exceptions. §§ 1605(a)(2), (3). The court addresses the applicability of each exception in turn.

    A. Commercial Activities Exception

A foreign state shall not be immune from the suit in United States federal or state courts when:

> [1] the action is based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

§ 1605(a)(2). Because the complaint does not allege that Germany performed any of the acts in the United States, plaintiff asserts jurisdiction under the third clause of § 1605(a)(2), requiring an act (i) in connection with (ii) a commercial activity that has (iii) a direct effect in the United States.

The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be

determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." § 1603(d). A foreign state engages in commercial activity when it exercises power in the manner of a private citizen distinct from those powers unique to a sovereign. See, e.g., Mortimer Off Shore Services, 615 F.3d at 108 (holding that Germany engaged in commercial activity when it assumed Western German bonds because they were "garden variety debt instruments . . . [that] may be held by private parties.") (quoting Republic of Argentina v. Weltover, Inc. (Weltover II), 504 U.S. 607, 615 (1992)); Harris v. VAO Intourist, Moscow, 481 F. Supp. 1056, 1064 (E.D.N.Y. 1979) (holding that the commercial activity criterion is "meant to distinguish activity which results from what in our society would be termed governmental, public or sovereign enterprises e.g., running police departments or parks from those resulting from the acts of foreign state agencies or instrumentalities acting in what we would deem a commercial capacity e.g., operating hotels or cruise ships."). A state's exercise of police power is a sovereign activity. Nelson, 507 U.S. at 361 (arrest, imprisonment, and torture); see Garb v. Republic of Poland, 440 F.3d 579, 586-87 (expropriation of property).

A foreign state acts "in connection" with a commercial activity when there is a substantive connection or a causal link between the two. See, Garb, 440 F.3d at 587 (holding that subsequent commercial treatment of expropriated property is too attenuated to be considered "connected" for the purposes of the statute); Drexel Burnham Lambert Group v. Committee of Receivers for Galadari, 12 F.3d 317, 330 (2d Cir. 1993) (declining to read "the 'connection' language of § 1605(a)(2) . . . to include tangential commercial activities to which the 'acts' forming the basis of the claim have only an attenuated connection").

An act causes a "direct effect" in the United States when the effect follows as an immediate consequence of the act, without an intervening element, and not "depend[ing]

6

crucially on variables independent of the conduct of the foreign state." Guirlando, 602 F.3d at 74-75 (internal quotations marks omitted). The effect in the United States must be a "legally significant event." Id. at 75. For example, when a contract between a U.S. party and a foreign entity specifically mandates payment into a U.S. bank account, non-payment constitutes a legally significant event in the United States. Id. (citing Weltover II, 504 U.S.at 617-18)). Conversely, conversion and property damage in a foreign country are not legally significant events in the United States, even when related events occur within the United States, including the transfer of funds from a New York bank to a foreign sovereign and financial loss to a U.S. plaintiff. See Antares Aircraft, L.P. v. Federal Republic of Nigeria ("Antares I"), 948 F.2d 90, 94-96 (2d Cir. 1991).[3]

In the instant action, plaintiff argues that her claims are connected to Germany and its predecessor government's commercial activity of operating a children's hospital on the Property. Plaintiff argues that the direct effects of these actions are the depreciation in the value of the Property (presumably due to the damage sustained) and the illegitimate taxes and fees paid. However, even presuming that running a children hospital is commercial activity within the meaning of the statute,[4] the court finds that alleged acts did not have a direct effect in the United States.

Antares is instructive here. In that case, the Second Circuit held that damage to an

---

[3] Antares I was vacated and remanded for reconsideration in light of the Supreme Court's decision in Weltover II, 504 U.S. 607. Weltover II affirmed the Second Circuit's decision in that case, Weltover I, 941 F.2d 145 (2d Cir 1991), but rejected its consideration "of what Congress would have wanted" in determining a direct effect for the purpose of the FSIA. On remand, the Second Circuit reaffirmed its decision in Antares I, writing, "Because the 'what Congress 'would have wanted' reasoning was not a basis for our Antares decision, the Court's rejection of this aspect of our analysis in Weltover does not undermine our holding in Antares." Antares Aircraft, L.P. v. Federal Republic of Nigeria ("Antares II"), 999 F.2d 33, 36 n.2 (2d Cir. 1993).

[4] While the court does not decide the issue, it observes that running a government-operated children's hospital is similar to the sovereign activities of managing a police force or a park, and less like operating a cruise ship or hotel. Cf. Nelson, 507 U.S. at 358 (commenting in dicta that state-run hospital's recruitment and employment of plaintiff was "arguably" commercial activity).

American-owned aircraft in Nigeria could not support jurisdiction under the FSIA because the legally significant acts of detention and damage to the aircraft all occurred in Nigeria. 948 F.2d at 94-95. The Second Circuit also found that the effects in the United States were not legally significant. The financial loss to the aircraft company was not legally significant because "[i]f a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIAs provision of immunity for foreign states." Antares II, 999 F.2d at 36. Additionally, the payment of fees from a New York bank account to Nigeria was not legally significant when the location from which payment originated was incidental and could have occurred from any location. See Antares I, 948 F.2d at 95-96. Only the contractual place of payment is significant to the direct effect requirement. Compare Weltover I, 941 F.2d at 153 (holding that "the legally significant act was defendants' failure to abide by the contractual terms; i.e., to make payments in New York") with Antares II, 999 F.2d at 36 (holding that payment from a New York bank account is not a legally significant event), and Int'l Housing Ltd. v. Rafidain Bank Iraq, 893 F.2d 8, 12 (2d Cir. 1989) (holding that because "payment in New York city was not a contractual requirement . . ." the payment is not a sufficiently direct effect in the United States).

Similarly, in the instant case, the legally significant events (the Property being taken and the subsequent damage to it) all occurred solely in Germany, not in the United States. Plaintiff's financial loss in New York is insufficient to provide jurisdiction. Additionally, while plaintiff paid taxes and fees to Germany, the fact that these payments came from New York does not constitute a legally significant event because the origination of these payments was not contractually mandated. Rather, it was incidental and inconsequential. Germany would have

accepted the payments from any location. Thus, plaintiff has failed to show any direct effect in the United States caused by the defendant's alleged acts. Consequently, the court holds that the commercial activities exception does not provide a basis for jurisdiction over plaintiff's claims in the instant action.

### (B) The Takings Exception

In order to establish subject-matter jurisdiction under the FSIA takings exception in § 1605(a)(3), four elements must be satisfied:

> (1) that rights in property are at issue;
>
> (2) that the property was "taken";
>
> (3) that the taking was in violation of international law; *and either*
>
> (4)(a) "that property . . . is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," *or*
> (4)(b) "that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]"

Garb, 440 F.3d at 588 (citing § 1605(a)(3)) (alterations in original). The taking of property in violation of international law refers to "the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law, including takings which are arbitrary or discriminatory in nature." Freund v. Republic of France, 592 F. Supp. 2d 540, 553 (S.D.N.Y. 2008) (internal quotations marks and citations omitted). The first prong of the fourth element (4(a)) mandates a higher threshold of proof than the second prong (4(b)) because the property must actually be present in the United States, while the second prong merely requires a showing that property is owned or operated by an agency or instrumentality. Garb, 440 F.3d at 589. When the property at issue is not in the United States, and the defendant is a foreign sovereign and not an agency or instrumentality, the takings exception does not provide jurisdiction. See Freund, 592 F. Supp. 2d at 561-62 (assuming, in a

suit against France, that the first three elements of the takings exception were met but holding that the fourth element was not met because France is a foreign sovereign, not an agency or instrumentality, and because the property in question was not located in the United States).

In the instant case, the court finds that it lacks subject-matter jurisdiction under the takings exception. Plaintiff contends that the takings exception is satisfied because Germany appropriated the Property in violation of international law, owned and operated the Property, and is engaged in commercial activity "by virtue of employing individual in the United States." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss p. 6. Defendant responds that because the Property is not owned or operated by an agency or instrumentality of a foreign state, the takings exception does not apply. The court agrees with defendant. Even presuming that the first three elements of the takings exception are satisfied, prong 4(b) cannot be satisfied because Germany is a foreign state, not an agency or instrumentality of a foreign state. See Garb, 440 F.3d at 589 (holding that because the Republic of Poland is a foreign state, it cannot also be an agency or instrumentality of a foreign state); Freund, 592 F. Supp. 2d at 562. Additionally, because the Property is located in Germany and not the United States, prong 4(a) cannot be applied. Indeed, the Property is land that is permanently situated in Germany. Because neither 4(a) nor 4(b) can be applied, this court holds that it lacks subject-matter jurisdiction over the plaintiff's claims under the takings exception.

## CONCLUSION

For the foregoing reasons, the court holds that Germany is immune from suit as a foreign sovereign. The claims in this action satisfy neither the commercial activities nor takings exception of the FSIA. Because the court lacks subject-matter jurisdiction, the motion to dismiss the complaint is granted. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated:     July 28, 2011
           Brooklyn, New York